Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 CR 248 | **DATE** | September 1, 2004 |
| **CASE TITLE** | United States v. Mancari | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, defendant's motion for an evidentiary hearing pursuant to <u>Franks v. Delaware</u> is denied. A status hearing is set for September 15 at 10:30.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 09 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 CR 248 |
| ) | |
| BRUNO MANCARI, ) | |
| ) | |
| Defendant. ) | |

DOCKETED SEP - 9 2004

## MEMORANDUM OPINION

Before the court is defendant's motion for an evidentiary hearing pursuant to Franks v. Delaware. For the reasons set forth below, the motion is denied.

## BACKGROUND

On January 8, 2002, a Cook County Circuit Court judge issued a warrant to search defendant Bruno Mancari's home. The warrant application was supported by the affidavit of Cook County Sheriff's Office Investigator Louis Schubrych and made in connection with the investigation of the murder of Joseph Russo. That same day, officers searched Mancari's home and recovered a .38 caliber Derringer. Mancari was later charged with Russo's murder and ultimately acquitted.

Mancari has since been indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This charge is based on the gun found in Mancari's home during the

execution of the search warrant on January 8, 2002. By his present motion, Mancari seeks a hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) to establish his claim that the affidavit submitted in support of the search warrant was tainted by the intentional omission of material information.

The affidavit identifies Schubrych, the affiant, as an investigator assigned to the Russo murder case, and begins with the following background information. Russo was murdered in April 1985. He was found in the trunk of his own car, and had been beaten and stabbed to death. Russo had been out on bond on a narcotics arrest and shortly before the murder had received a federal grand jury subpeona for testimony regarding a criminal investigation of Mancari. FBI Agent Wayne Zydron had told Schubrych that Mancari was an auto dealer "linked" to an auto theft ring and that Russo had been enlisted to obtain phony car titles.

Schubrych's affidavit states that a James Palaggi had informed Schubrych that Mancari had approached Palaggi and asked him to kill Russo. Palaggi "declined this contract," and Mancari later told him (Palaggi) that someone named "Murph" or "Murph the Surf" would do the murder. Schubrych identified "Murph" as Harold Merryfield.

The affidavit states that from December 1995 through February 1996, Merryfield provided detailed information to both the

FBI and state prosecutor Matt Mahoney regarding the Russo murder.[1] Merryfield had been an "enforcer" for Mancari - paid to threaten and beat people - since 1981. In March 1985, Mancari approached Merryfield and asked him to beat Russo. Merryfield agreed. On the arranged date, Mancari lured Russo to Merryfield's mother's house by telling Russo that he (Mancari) had lined up one of his customers to purchase cocaine from Russo. Prior to Russo's arrival, Mancari and another man showed up at the house and Mancari told Merryfield to leave because he would not be needed for the beating. Merryfield left the house and when he returned a couple of hours later, he found Mancari and the other unidentified man standing over Russo's dead body. Mancari said to Merryfield: "Clean this shit up and call me tomorrow." Mancari and the other man then left. Merryfield then loaded the body into the trunk of Russo's car and parked it in a public parking lot. Merryfield found six ounces of cocaine in Russo's sock, which Mancari later told him to keep as payment for disposing of the body. Merryfield discarded a bloody hammer, but kept two bloody knives because he thought his mother would notice their absence. Merryfield "recently admitted" that a friend named Peter Fisher helped him remove Russo's body from the house. Fisher has been located and

---

[1] Schubrych's affidavit does not expressly attribute each of the following pieces of information regarding the Russo murder to Merryfield's account thereof (though that appears to have been Schubrych's intent), nor does it attribute each of Merryfield's statements to a particular source other than the general reference to the FBI and Mahoney.

admitted the same.

The affidavit further states that Merryfield told Schubrych that while he was in a Wisconsin state prison in 2001 (on an unrelated charge) he was in contact with Mancari. Merryfield would have his daughter, Tammy Merryfield, contact Mancari by telephone, using the fictitious name "Joanne." Upon hearing from "Joanne," Mancari would either visit Merryfield or write to him using Tammy Merryfield's name as the sender and an old address of Merryfield's mother as the return address. Prison officials verified that Mancari had visited Merryfield on October 5, 2001 and that Merryfield had received a check for $500 on October 26, 2001. Some time later, Merryfield received another check for $100.

The affidavit goes on to describe how, in cooperating with the investigation, Merryfield and his daughter agreed to place a recorded telephone call to Mancari for the purposes of arranging another visit. On November 27, 2001, Mancari received a telephone call from "Joanne" and agreed to visit Merryfield on November 30, 2001. Merryfield agreed to have the meeting recorded on audio and video tape. During the recorded meeting between Mancari and Merryfield, there were several references made to the Russo murder investigation and Mancari agreed to send Merryfield $5,000 for his legal fees. They agreed that Mancari would send a money order to Merryfield in prison by registered mail.

Approximately one week later, on December 6, 2001, a $5,000

bank check was sent to Merryfield in prison by certified mail. The check was dated December 4, 2001 - five days after Mancari's visit - and was enclosed in an envelope identifying Tammy Merryfield as the sender and listing an outdated address of Merryfield's mother. The face of the check did not indicate who had actually paid for it. The check was drawn on the "First Midwest Bank," which was located approximately one and a half miles from one of Mancari's auto dealerships. Bank security indicated that the check sent to Merryfield was part of a multi-part form with two copies behind the original. These copies are often kept by the sender as a personal receipt for the check amount.

Based on the information in Schubrych's affidavit, state investigators sought a warrant to search Mancari's home for: "[A]ny official check receipts from the December 4, 2001 $5,000.00 check and any other check receipts or bank withdrawal records mailed from Bruno Mancari to Harold Merryfield along with any additional correspondence or financial transaction that Bruno Mancari and Harold Merryfield may have had relative to the murder of Joseph Russo."

## **DISCUSSION**

A search warrant may only be issued upon a showing of probable cause. See U.S. Const., amend. IV. An affidavit submitted in support of a warrant establishes probable cause if it "sets forth facts sufficient to induce a reasonably prudent person

to believe that a search . . . will uncover evidence of a crime." United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990). When deciding whether an affidavit supports a finding of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before [said magistrate], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." See id. (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Under Franks v. Delaware, a defendant may be entitled to an evidentiary hearing to challenge the veracity of an affidavit submitted in support of a search warrant. See Franks, 438 U.S. at 154. Affidavits submitted in support of a warrant are presumed valid. See United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000). Thus, to obtain a Franks hearing, a defendant must make a "substantial preliminary showing" that (1) the warrant application contained a false statement or material omission, (2) this was done knowingly or with reckless disregard for the truth, and (3) in the case of a false statement, the affidavit does not establish probable cause if the false statement is excised, and in the case of an omission, the affidavit would not support a finding of probable cause if the omitted material were included. See id. at 155-56; McNeese, 901 F.2d at 593-94; United States v. Williams, 737

F.2d 594, 604 (7th Cir. 1984). The Seventh Circuit has noted that the three elements necessary to entitle a defendant to a Franks hearing "are hard to prove, and thus *Franks* hearings are rarely held." United States v. Maro, 272 F.3d 817, 821 (7th Cir. 2001).

Mancari argues that several pieces of material information were intentionally withheld from Schubrych's affidavit. First, Mancari points to the criminal histories of both Merryfield and Palaggi. According to Mancari, between 1966 and 1987, Merryfield was convicted of numerous offenses including burglary, aggravated robbery, a narcotics offense, and a gun possession charge. As for Palaggi, Mancari states that between 1982 and 1991 he was convicted of possession of stolen motor vehicles, mail fraud relating to false vehicle titles, and an unnamed federal offense for which he received a 30-month prison sentence. Second, Mancari proffers that both Merryfield and Palaggi had been using drugs at or around the time of their statements to law enforcement authorities. Finally, Mancari cites multiple statements that Merryfield gave to different law enforcement authorities in conjunction with the investigation that contradict the version recited in Schubrych's affidavit. These statements include: (i) in one statement, Merryfield told authorities that it was *he* who lured Russo to the house, and in another statement, that he did not lure Russo to the house, but simply left the door open for Mancari but he (Merryfield) was not there when Mancari arrived, (ii) at one time, Merryfield told authorities that when he returned to the house he heard arguing in

the basement, looked down the basement stairwell, and saw a person on the floor with a coat pulled over his head and surrounded by a pool of blood, (iii) Merryfield had given varying statements regarding where he found the knives and the hammer, and where he disposed of the hammer, and (iv) Merryfield gave several detailed accounts of the murder, including a description of the disposal of Russo's body, without the subsequently admitted fact that Fisher had been involved.

Mancari has not made the requisite showing under Franks. Even taking Mancari's alleged omissions regarding criminal histories, drug use and inconsistent statements by Merryfield at face value, these omissions are not material. That is, inclusion of the information would not have undermined the showing of probable cause. As a prefatory matter, it is important to establish what it is that the warrant was seeking, and therefore what showing of probable cause was needed to issue the warrant. The application sought a warrant to search for official check receipts from the $5,000 check and additional correspondence or financial transaction documents between Mancari and Merryfield relating to the Russo murder. Therefore, the affidavit needed to demonstrate probable cause to believe that either of those items would be found in Mancari's home. The affidavit did not need to establish, as Mancari seems to argue, probable cause to believe that Mancari committed the murder.

Returning to the affidavit then, even if we were to include

the material proffered by Mancari and, taking it a step further, find that the criminal histories, drug use, and inconsistent statements rendered Merryfield's and Palaggi's statements incredible, the following information in the affidavit remains undisputed: Russo was murdered in March 1985; shortly before the murder, Russo received a federal grand jury subpoena for testimony in relation to a criminal investigation of Mancari; information gleaned from law enforcement authorities demonstrated ongoing and surreptitious contact between Mancari and Merryfield, an individual who had provided the government with detailed information regarding Russo's murder; this contact included a recorded conversation between Mancari and Merryfield about the murder investigation and a $5,000 payment that Mancari would send to Merryfield for legal fees; within days of this discussion, a check for $5,000 was sent to Merryfield in an envelope identifying the sender as Tammy Merryfield and using an old address of Merryfield's mother; personnel from the bank on which the $5,000 check was drawn indicated that the check was part of a multi-part form with two copies behind the original that are often kept as personal receipts. With this information alone, the affidavit presented a "fair probability," if not more, that check receipts or other financial documentation or correspondence between Mancari and Merryfield related to the Russo murder would be found in Mancari's home. See McNeese, 901 F.2d at 592. Accordingly, a Franks hearing is unnecessary and Mancari's motion is denied.

DATE:     September 1, 2004

ENTER:    _____

          John F. Grady, United States District Judge